W. S. McPherson *vs.* Joseph Talbott.—*December*, 1839.

Co-sureties are always supposed to assume the same risk, and to stand rela-
tively to the principal, in the same situation, neither obtaining any benefit
by the transaction, but each equally subjecting himself to responsibility.

Where one surety, without the knowledge of his co-surety, by previous ar-
rangement with the principal debtor, received one-half of the sum bor-
rowed, he is not entitled to contribution from the other surety, who may
have undertaken the responsibility, in the confidence that his associate
was, equally with himself, exposed to risk.

Appeal from the equity side of *Frederick* County Court.

The bill in this cause was filed on the 19th August 1829,
by the appellee against the appellant, and charged that, on the
10th May 1826, *John Reynolds* having occasion for a sum of
money applied to, and borrowed of, a certain *Edward Traill*
the sum of $1000, to secure the re-payment of which he gave
to the said *Traill* his single bill, with the appellant and appel-
lee as his sureties; that the single bill not being paid, *Traill*
sued thereon at law, recovered judgment, and levied an exe-
cution on the property of appellant and appellee; that complain-
ant the appellee paid thereon $621.87, one half of the debt,
interest and costs; that *John Reynolds* is insolvent; that on the
22nd March 1827, *Reynolds* executed to *W. S. McPherson*, a
bill of sale to indemnify him from loss, on account of his en-
dorsement of other notes, and the single bill aforesaid; that
when the bill of sale was executed, *Reynolds* was known to
be in failing circumstances, and the property transferred by it
was the mass of *Reynolds'* estate; that *McPherson* has sold the
property assigned to him, and received the proceeds, the
amount being unknown to complainant; that no part of the
money arising from said sale, has been applied to the bill given
to *Traill*, and that if the funds in the hands of *McPherson*
arising from the said sale, were properly applied, that the debt
to *Traill* would be nearly if not fully liquidated. That in
the single bill to *Traill*, *McPherson* and complainant were
co-sureties, *Reynolds* the principal debtor; that the bill of sale
was given in part to secure *McPherson* from liability on ac-

count of this debt; that the proceeds of that property in the hands of *McPherson* are applicable in a just proportion to the extinguishment of the debt aforesaid due from *Reynolds* to *Traill*, and for the common benefit of the co-sureties. Prayer for *subpœna* against *McPherson*, account, and equitable application of the fund in question, &c.

The answer of *William S. McPherson*, admitted the execution of the single bill, but denied he was co-surety with *Talbott*. It admitted that the proceedings at law by *Traill* were correctly stated, that *Talbott* paid one half of the judgment, and he *McPherson* paid the other half under said *fieri facias;* that *Reynolds* is insolvent; that in fact *Talbott* was alone known to defendant, as the principal debtor in the said bill at the time of the execution of the same; that the $1000 borrowed was originally paid by *Traill* to *Talbott;* that defendant became a party to the bill at *Talbott's* solicitation, and to accommodate him, and as his surety; that *Reynolds* made no application to respondent; that defendant afterwards, finding that *Talbott* and *Reynolds* had divided the $1000 between them, he pressed the said *Reynolds* for indemnity. The answer admitted the sale of *Reynolds'* property, his application for relief under the insolvent laws, and denied all obligation to account to *Talbott*, &c. &c.

A commission was issued and a variety of evidence taken, the result of which in point of fact is stated in the opinion of this court.

The County Court (J. BUCHANAN, C. J., and T. BUCHANAN, A. J.,) decreed as follows:

It must be admitted that the case is not free from difficulty, and doubts may exist, as to the real character of the transaction. If the facts were as stated by the defendant in his answer, it would result that, the complainant has no equitable title to the interposition of this court; on the other hand, if the defendant was a co-security with the complainant to *Edward Traill*, who loaned the sum of $1000, and for the payment of which the obligation or single bill dated 10th May 1826, was given, then, it is conceded that, the complainant is entitled to

the relief sought by the bill. The defendant is positive in the statement made by him in his answer, and the court feels embarrassed by the known character and acknowledged integrity of the defendant, in coming to a conclusion in conflict with his defence, but there is no avoiding such a decision. None of the witnesses examined for the complainant under the commission have been impeached, of course they stand fair before the court, and their evidence, taken in connexion with the bill of sale, executed by *Reynolds* to the defendant on the 22nd March 1827, is sufficient by the established rules of equity to sustain the allegations of the bill, whatever the real merits of the case may be. Considering the complainant and defendant as co-secureties for *Reynolds* in the obligations to *Traill*, the question occurs, whether the complainant is entitled to any, and what contribution from the funds placed in the hands of the defendant by *Reynolds* on the 22nd March 1827.

It is admitted by the answer that, the property embraced by the bill of sale was sold, and the proceeds first applied to a debt due to the bank, and the residue amounting to $621.87 to the payment of *Traill's* debt, founded on the bill obligatory aforesaid. This residue, being the same placed by *Reynolds* in the hands of the defendant, for the payment of and to indemnify him against *Traill's* claim, having been applied by the defendant to that object, must be considered, in the view of a court of equity, as a payment made by *Reynolds* himself, and if so, the complainant, who has paid one half of *Traill's* debt, is entitled to a contribution from the defendant, who it seems has paid nothing out of his own funds. Therefore decree that, *McPherson* pay to *Talbott* $310.93, with interest from 14th August 1829, it being one half of the sum which the defendant received from *Reynolds* for the payment of *Traill's* debt, and further, that the defendant pay the costs of suit.

From the decree *W. S. McPherson* appealed to this court.

The cause was argued before ARCHER, DORSEY and CHAMBERS, J.

By W. A. SCHLEY for the appellant, and

By PALMER for the appellee.

ARCHER, J., delivered the opinion of this court.

We are of opinion that, the complainant has no equity which would enable him to recover against the defendant, as co-security with him for *Reynolds*. The loan was in fact obtained for the mutual benefit of *Reynolds* and *Talbott*, by an understanding and agreement between *Reynolds* and *Talbott*, anterior to the loan. The money obtained was divided between them, each taking one half of the sum borrowed. This understanding and agreement we have no evidence was ever communicated to *McPherson*.

If we are to take *Reynolds'* evidence as true, then he was held out to *McPherson* as the principal, and he was by him invited to be his security with *Talbott*. Under such circumstances, it would not have occurred to *McPherson*, that the loan was to be equally for the benefit of his co-security.

Securities are always supposed to assume the same risks and responsibility, and to stand relatively to the principal in the same situation, neither obtaining any benefit by the transaction, but each equally subjecting himself to responsibility, relying on the ability of the principal to meet the engagement, and relying on each other's willingness to embark in the same risks and responsibility. *McPherson* may have relied on the willingness of *Talbott* to go security, and may have been influenced to become the security by the confidence reposed by *Talbott* in the solvency and ability of *Reynolds*, supposing that *Talbott* was in the condition of an ordinary security. But if he had been informed, that *Talbott's* signature had been purchased by a promise to let him have half the money, as a consideration upon which he would give his name to *Reynolds* as securety, it is by no means certain that he would have incurred the obligation. The concealment of the fact by *Talbott* that he was to derive an advantage by the loan, operated as a fraud upon the co-security, who had a right to suppose that he was conferring a benefit solely upon the principal.

The co-security might be very willing to obligate himself for the principal, but unwilling to assume responsibility for the surety, and to the extent of that part of the loan, which pas-

sed by agreement into the hands of *Talbott*, it was put to a hazard to which the co-security had never subjected it, and might have been entirely unwilling to have subjected it. To be sure, *McPherson* would not have objected to the uses to which *Reynolds* chose to apply the sum borrowed, after he had obtained it; that he may be presumed to have been willing to trust to his prudence and discretion; but it is the previous agreement, to allow the security to participate in the loan, without the disclosure of that fact, which in our judgment forms the objectionable feature in the transaction. The most entire fairness on the part of securcties, each would have a right to exact; their situation should be equal, and this may be demanded in all cases where contributions for losses are sought, by one security from another.

DECREE REVERSED WITH COSTS, AND BILL DISMISSED.

CHAMBERS, J., dissented.